**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RANDY WILLIAMS,<br>Plaintiff,<br>v.<br>SANDUVAL, et al.,<br>Defendants. | Case No.: 1:13-cv-01015-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS FROM THE ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER SECTION 1983<br><br>[ECF Nos. 1, 9, 11, 12] |

Plaintiff Randy Williams is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant action on July 1, 2013. On March 7, 2014, the Court screened Plaintiff's complaint and found Plaintiff stated a cognizable excessive force and retaliation claim against Defendant Sanduval only. The Court granted Plaintiff the option of filing an amended complaint or notifying the Court of his intent to proceed on the claims against Defendant Sanduval only. On April 28, 2014, Plaintiff notified the Court of his intent to proceed on the excessive force and retaliation claims against Defendant Sanduval only. Accordingly, all other claims and defendants should be dismissed from the action for failure to state a cognizable claim.

///

///

///

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**COMPLAINT ALLEGATIONS**

On July 4, 2012, Defendants Aguyo and Sedledsky were the floor officers assigned to the building in which Plaintiff was housed, and Defendant Sanduval was assigned to the building control tower. On July 4, 2012, the facility was on lockdown status due to a riot. In such circumstances, no

prison cell door may be opened unless two escort officers are present and the inmate is first handcuffed behind his back through the food tray port of the door.

On several occasions prior to July 4, 2012, Defendant Sanduval and Plaintiff had engaged in heated verbal confrontations. On this date, Defendants Aguyo and Sedledsky passed out supplies issuing it to all inmates through their prison cell door food slot, except for Plaintiff. Unlike all the other inmates, Plaintiff's supplies were placed on the floor of the tier in front of his prison cell. When Plaintiff realized that he had been singled out, he began to yell for his weekly supplies to be issued to him through the prison cell tray slot, but he did not receive a response.

Eventually, Defendant Sanduval told Plaintiff to "shut up," but Plaintiff continued asking for his weekly supplies. Profanities then spewed from Defendant Sanduval and the Defendant expressed his ongoing hostility toward the Plaintiff regarding the prior verbal confrontations between the Defendant and Plaintiff.

Sometime thereafter Defendant Sanduval activated Plaintiff's prison cell door to open, without any security escort officers present and without Plaintiff first being handcuffed behind his back during this emergency prison lockdown status. Defendant Sanduval opened the prison cell door just wide enough to enable Plaintiff to kneel down and extend his head and one arm outside the door, and instructed Plaintiff to reach out and grab his weekly supplies off the floor of the tier.

Plaintiff, acting in good faith, complied with the Defendant's instructions by kneeling down and sticking his head and one arm outside the prison cell door in an attempt to reach and grab his weekly supplies off the floor of the tier, when suddenly without any warning the prison cell door was electronically activated by Defendant Sanduval, closing on Plaintiff's head and neck area, painfully smashing Plaintiff's temple, ear and neck areas as the powerful fast moving electronic prison cell door continued to grind closed on Plaintiff's head and neck area against the door-jamb.

Plaintiff temporarily lost consciousness and upon regaining consciousness observed that the prison cell door was now partially open so that Plaintiff could remove his head, and Defendant Sanduval was laughing hilariously at Plaintiff stating, "take it like a man. That's what happens when you put your head out the door controlled by someone other than yourself" (or something similar to that), and continued laughing and mumbling "stupid ass," "dumb fuck," "can't you read, the sign says

NO WARNING SHOTS," while clutched in the throes of laughter. Plaintiff contends there are no warning signs posted on the walls.

As a result of Defendant Sanduval closing the door on Plaintiff, his head began swelling, his ear was bleeding, and he had abrasions and damaged skin in the area where the door closed and pinned his head to the door jamb. Plaintiff was in severe pain, had dizzy and blurred vision, had neck spasms, a throbbing headache, and vomiting.

Plaintiff contends that Defendants Aguyo and Sedledsky had a duty to ensure and protect the safe custody of Plaintiff, but knowingly, willfully and intentionally omitted to perform that duty, and acted in deliberate indifference to the safe custody of Plaintiff. Plaintiff further contends that Defendants Aguyo and Sedledsky acquiesced in Defendant Sanduval's retaliation scam by intentionally placing Plaintiff's weekly supplies on the floor of the tier outside of Plaintiff's prison cell, instead of passing them through his prison door food tray slot.

On or before July 4, 2012, Defendant John Doe Housing Sergeant and/or In-Service Training Supervisor had a duty to properly train, supervise, and ensure that Defendant Sanduval performed his job duty of operating the electronic prison cell door properly and safely.

## III.

## DISCUSSION

### A. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency,

regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Based on Plaintiff's allegations that Defendant Sanduval intentionally opened and closed the prison cell door causing injury, Plaintiff states a cognizable claim against Defendant Sanduval for excessive force.

**B. Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

It appears that Plaintiff is attempting to allege a failure to protect claim against Defendant Aguyo, Sedledsky, John Doe, and M. Biter for failure to protect him against the force utilized by Defendant Sanduval. However, Plaintiff's allegations fail to demonstrate that any of these Defendants knew of and disregarded an excessive risk of harm to Plaintiff. Rather, Plaintiff merely alleges in vague and conclusory terms that these Defendants knew of the dangerous condition and failed to take action. The fact that Plaintiff alleges Defendants Aguyo and Sedledsky left his cleaning supplies outside of his prison cell, does not a causal connection to the fact that Defendant Sanduval would subsequently intentionally open and close the door on Plaintiff resulting in injury. This is insufficient to give rise to a constitutional violation, and Plaintiff fails to state a cognizable claim for failure to protect.

///

**C. Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Alternatively, where the claim is not that the discriminatory action is related to membership in an identifiable group, a plaintiff can establish an equal protection "class of one" claim by alleging that he as an individual "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" in the departure from some norm or common practice. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). However, allegations that defendants have merely done some harmful act against the plaintiff, without more, fail to state an equal protection "class of one" claim. Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1990); Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) ("[T]he purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law ….") (internal quotation marks omitted).

Plaintiff contends that his rights under the Equal Protection Clause were violated when Defendants Aguyo and Sedledsky placed Plaintiff's cleaning supplies on the floor if the tier in front of his prison cell which required Defendant Sanduval to open his electronic prison cell door which resulted in injury, whereas other similarly situated inmates were provided their supplies through their prison cell door within the presence of two escort officers. Plaintiff's allegations allege nothing more than a single harmful act against Plaintiff based on his prior confrontations with Defendant Sanduval, and without more he fails to state an equal protection "class of one" claim. Accordingly, Plaintiff fails to state a cognizable claim, and the Court will grant Plaintiff the opportunity to file an amended complaint.

**D. Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-1289 (9th Cir. 2003). A plaintiff must show a causal connection between a defendant's retaliatory animus and a subsequent injury. Hartman v. Moore, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation, i.e., without the prohibited animus, the adverse action would not have been taken. Id. at 260.

Plaintiff contends Defendants Aguyo, Sedledsky, and Sanduval's action were done in retaliation for verbally responding to Sanduval's verbal hostility. Plaintiff's allegations state a cognizable claim for retaliation against Defendant Sanduval only. Plaintiff does not allege any causal connection between his verbal confrontations with Defendant Sanduval and any improper action by Defendants Aguyo and Sedledsky. Accordingly, Plaintiff states a cognizable retaliation claim against Defendant Sanduval only. Plaintiff will be granted leave to amend this claim if he feels he can do so.

**E. Failure to Train**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862

(9th Cir. 1979). In other words, "[u]nder § 1983 a supervisor is only liable for his own acts. Where the constitutional violations were largely committed by subordinates the supervisor is liable only if he participated in or directed the violations." Humphries v. County of Los Angeles, 554 F.2d 1170, 1202 (9th Cir. 2009).

A supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons whom the subordinates are likely to come into contact. See Canell v. Lightner, 143 F.3d 1210, 1213-1214 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate that the subordinate's training was inadequate, that the inadequate training was a deliberate choice on the party of the supervisor, and that the inadequate training caused a constitutional violation. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).

Here, Plaintiff's claim that Defendant John Doe (sergeant) failed to properly train Defendant Sanduval on how to perform his job duty in operating the electronic prison cell door properly and safety rests solely on the allegation that Defendant Sanduval intentionally opened and closed the cell door to cause injury to Plaintiff based on past confrontations. A single incident in which a subordinate disregarded correction procedures does not demonstrate inadequate training. Accordingly, Plaintiff has failed to state a claim for failure to train, and Plaintiff will be given leave to amend this claim, if he can do so.

**F. Supervisory Liability**

Plaintiff names Warden Biter as a Defendant in the complaint.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). As previously stated, there is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark

County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Warden Biter. The only basis for such a claim would be respondeat superior, which is precluded under section 1983. Accordingly, Plaintiff fails to state a cognizable claim based on supervisory liability.

**IV.**

**RECOMMENDATION**

Plaintiff's complaint states a cognizable claim against Defendant Sanduval for excessive force and retaliation. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. Based on Plaintiff's notification of his intent to proceed on the claims against Defendant Sanduval only and dismiss all other claims,

IT IS HEREBY RECOMMENDED that:

1. The instant action proceed on Plaintiff excessive force and retaliation claims against Defendant Sanduval only; and
2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim upon which relief may be granted under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

//

//

//

//

//

//

//

Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 9, 2014**

UNITED STATES MAGISTRATE JUDGE